(74 South. 900)

No. 22185.

Succession of FISHER.

(April 16, 1917.)

*(Syllabus by the Court.)*

1. EXECUTORS AND ADMINISTRATORS ☞ 510(6, 8)—SUCCESSION—OPPOSITION TO ADMINISTRATOR'S ACCOUNT—APPEAL—BOND.

When a judgment has been rendered on an opposition to the account of an administrator, allowing the opponent's claim in part and rejecting it in part, and each party, the administrator and the opponent, obtains a separate order of appeal, and the administrator furnishes an appeal bond, and files the transcript in the appellate court, it is not necessary that the opponent should also furnish an appeal bond or file a transcript of appeal. The opponent's right to an amendment of the judgment in so far as it rejects the opposition to the account may be asserted by an answer to the appeal taken by the administrator.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2241, 2246, 2247, 2249.]

2. EVIDENCE ☞265(18)—WEIGHT AND SUFFICIENCY.

The testimony of witnesses to admissions alleged to have been made by a person who has died is the weakest kind of evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1050.]

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Oppositions by Lucinda Cuspear and by Martha Kent to the provisional account of Joshua Fisher, as administrator of the estate of Louis Fisher, deceased. Judgment recognizing the claim of Martha Kent and the claim of Lucinda Cuspear in part, and the administrator and Lucinda Cuspear appeal. Judgment affirmed.

St. Clair Adams and Francis P. Burns, both of New Orleans, for Joshua Fisher. Andrew M. Buchmann, of New Orleans, for Lucinda Cuspear and Martha Kent.

O'NIELL, J. Louis Fisher died, intestate, in the city of New Orleans, on the 29th of March, 1914, leaving an estate valued at $6,-123.33, and no debts, except $14, due for medical services rendered during his last illness. The estate consisted of a house and lot valued at $1,000, household furniture and effects valued at $15, a life insurance policy, payable to his legal representatives, for $500, cash on deposit in the Commercial-Germania Trust & Savings Bank, $2,755.09, and cash on deposit in the Whitney-Central Trust & Savings Bank, $1,853.24. His son, Joshua Fisher, and his daughter, Carrie Fisher Elsy, were his heirs at law. The daughter died, intestate, and without issue, about two months after the death of her father.

Joshua Fisher qualified as administrator of his father's estate; and, to his provisional account, two oppositions were filed, one by Lucinda Cuspear, a sister of the decedent, and the other by Martha Kent, his niece.

Lucinda Cuspear claims that she is entitled to the occupancy of two rooms in the house left by the deceased, for the term of her life, having paid the cost of building the rooms, $150. She also claims that she is entitled to $240, that is, $20 a month for the last 12 months of the life of Louis Fisher for services rendered to him, as cook, washerwoman, nurse, and housekeeper. She also claims to be a creditor of the estate for the further sum of $2,500, which she alleges she deposited with her brother for safe-keeping, in various sums, from time to time, during a period of about 20 years.

Martha Kent claims that she is a creditor of the succession for the sum of $519. She alleges that she deposited with her uncle, for safe-keeping, on or about the 14th of September, 1914, the proceeds of certain life insurance paid to her on the death of her son, amounting to $499, and thereafter deposited with her uncle, for safe-keeping, $45 out of her earnings; and that, at the time of her uncle's death, she had withdrawn only $25 of the amount deposited.

The district court rendered judgment rec-

ognizing Lucinda Cuspear's right of occupancy of the two rooms, and allowing her claim of $240 for services rendered to the deceased. The court rejected entirely her claim of $2,500, alleged to have been deposited with her brother for safe-keeping. Martha Kent obtained judgment recognizing her claim of $519.

The administrator and Lucinda · Cuspear each obtained an order of appeal. The administrator furnished an appeal bond and brought up the transcript of appeal. Lucinda Cuspear did not furnish an appeal bond; but she and Martha Kent filed an answer to the appeal taken by the administrator, praying that the judgment appealed from be affirmed, except in so far as it rejected Lucinda Cuspear's claim of $2,500, and that it be amended in that respect by increasing the judgment in her favor to $2,740.

[1, 2] The learned counsel for the administrator contend that Lucinda Cuspear's failure to furnish an appeal bond and file the transcript of appeal was an abandonment of her appeal, and that she is therefore not entitled to an amendment of the judgment appealed from. The decisions cited in support of that proposition, however, are not applicable to the situation presented here. It was not necessary for Lucinda Cuspear to furnish an appeal bond and file the transcript in this court when the administrator had perfected his appeal and filed the record here. Her answer to the appeal, taken by the administrator, is an appropriate remedy for obtaining an amendment of the judgment appealed from on any contest between the appellant and appellee.

Lucinda Cuspear's right of occupancy of two rooms in the house belonging to the estate of the decedent is proven by his written acknowledgment, and is not seriously disputed. In that respect the judgment appealed from is correct.

The evidence in the record also supports the judgment rendered in her favor for $240 for the services she rendered, as cook, washerwoman, and housekeeper, for the decedent.

Her claim for $2,500 depends for its support upon the statement of the claimant, Lucinda Cuspear, that she deposited all of her wages with her brother for safe-keeping, during a period of about 20 years, and that she thinks the sums deposited amount to $2,500 or more. In corroboration of her testimony, several witnesses testified that Louis Fisher told them he had his sister's earnings deposited to his credit, to an amount sufficient for the interest to maintain her during the balance of her life. Only one of those witnesses testified that Louis Fisher had stated that the amount he had on deposit for Lucinda Cuspear was $2,500. The others testified that he did not state the amount. On account of the impossibility of contradiction, testimony of witnesses repeating admissions said to have been made by one who has died is the weakest kind of evidence to support a large claim against the succession of the deceased. The accounts taken from the books of the banks in which Louis Fisher kept his funds show that it is highly probable that Lucinda Cuspear did have her earnings deposited to the credit of her brother. The evidence shows that Louis Fisher was an honest, industrious, economical colored man; but his wages were only $1.85 per day, and he was out of employment at times. It is very improbable, if not quite impossible, for him to have deposited the sums placed to his credit in the banks, unless he was depositing, with his own earnings, the funds of some one else. But we cannot render a judgment for a definite sum on the mere conjecture or probability, however strong it may be, that the claimant deposited some money from time to time with the decedent for safe-keeping. There is one circumstance that would have strengthened her claim greatly if she had not, in her own testimony,

contradicted the presumption arising in her favor. We refer to the fact that, about a month before the date on which she made a loan of $500 to her sister, Louis Fisher drew that amount out 'of bank. If the $500 withdrawn from the bank by Louis Fisher was given to Lucinda Cuspear, to be loaned to her sister, the inference would be very strong that Fisher had Lucinda Cuspear's money deposited to his credit. But she, in her testimony, denied that the $500 which she loaned to her sister was obtained from Louis Fisher. She insisted that she got the $500 from her employer. He testified that he had no recollection of having paid her $500 at one time, although he expressed faith in her honesty and veracity, and would not deny positively that he had never paid her such a large sum at one time. Although we are of the opinion that this estate has been enriched at the expense of Lucinda Cuspear to some extent, we cannot determine that extent exactly, or even approximately, from the evidence before us; and we are therefore constrained to affirm the judgment in so far as it rejects the demand of Lucinda Cuspear for the money alleged to have been deposited with her brother for safe-keeping.

The evidence supports the claim of Martha Kent for $519. Louis Fisher gave her a written acknowledgment that the amount he had received and owed her was at one time $548. Two witnesses testified that the receipt was not written or signed in the handwriting of Louis Fisher. But they were men of very little education, and we do not believe they were familiar with his handwriting or signature. Other receipts signed by him were introduced in evidence to show by comparison that the handwriting and signature on the receipt given to Martha Kent were not genuine; but the originals were not brought up in the transcript, and we are unable to make the comparison. We are convinced that the receipt was given by Louis Fisher to Martha Kent. Her testimony that she deposited the amount she claims with Louis Fisher for safe-keeping is corroborated by other evidence, particularly by the proof that she collected the money from the insurance companies, and that a deposit approximating that sum was credited to the account of Louis Fisher soon after the date at which Martha Kent and Lucinda Cuspear say he deposited Martha Kent's money to his·credit.

Our conclusion is that the judgment appealed from is correct.

The judgment appealed from is affirmed, at the cost of the estate of Louis Fisher.