## BUTTITTA v. VARINO et al.
## No. 6104.

Court of Appeal of Louisiana. Second Circuit.

May 3, 1940.

Rehearing Denied June 10, 1940.

Writ of Certiorari and Review Denied July 18, 1940.

Fink & Fink, of Monroe, for appellant.

Theus, Grisham, Davis & Leigh, of Monroe, for appellees.

HAMITER, Judge.

A right inguinal hernia is possessed by plaintiff, Vincent J. Buttitta. He contends, and alleges in the petition of this tort action, that it resulted from straining himself when attempting to extricate his foot from beneath a wheel of an automobile negligently driven on and across it by George Varino. A solidary award of damages in the amount of $15,000 is asked by him against the said driver, the F. Varino Company, Inc., and the Globe Indemnity Company of New York.

Defendants, in their joint answer, deny the alleged occurrence of an accident, and further deny that the claimed disability is

a result of any negligence of George Varino. Alternatively, they plead contributory negligence.

The demands of plaintiff were rejected by the district court, after the introduction of evidence, and he appealed.

Buttitta and Varino, on July 16, 1938, were city salesman and vice-president, respectively, of F. Varino Company, Inc., of West Monroe, Louisiana. About eight o'clock of the evening of that date, after working hours, they departed from the premises of the named concern in a five-passenger company automobile. Buttitta was desirous of obtaining transportation to his home in Monroe, a few miles away; and Varino, the driver, had agreed to provide it.

The machine was brought to a stop about the middle of a block and on the east side of South Sixth street in Monroe. It was headed in a northerly direction with the right wheels approximately one and one-half feet from the curb. On the west side of such street and almost directly opposite the parked car stood the Kirsh Hotel. Buttitta's place of residence was from one and one-half to two blocks to the northeast.

For some thirty minutes or more, after the stopping and the silencing of the motor, Buttitta continued to occupy the front seat beside the driver; and the two engaged in conversation. Eventually Buttitta descended to the street through the right door, walked around the front end of the machine and proceeded in the direction of the hotel. Thereupon, Varino started the motor; but before the car was moved, plaintiff returned, stood on its left side next to the driver, and they commenced to converse anew. The ignition switch was again turned off.

It was at or near the conclusion of the second period of conversation that the alleged accident occurred. The facts relating thereto are furnished only by the participants, Buttitta and Varino; and each gives a different version of it.

The plaintiff Buttitta says that while standing very close to the left side of the car talking with Varino, the machine, whose motor was already running, moved without any warning being given him; and the left front wheel passed quickly over his right foot. When the contact was made, he grasped the fender, threw his weight on the left foot in an effort to remove the offended member, and strained himself: On reaching the sidewalk on the east side of the street, to which he hobbled following the accident, he observed that the car had stopped eight or ten feet forward or north of the point where it was located when the conversation took place. He neither recalls whether it was moving forward or backward when his foot was trapped, nor remembers whether he proceeded to the sidewalk by passing in front or in the rear of the machine. Varino asked him if injury had occurred. His reply was that pain was being experienced. Then he walked to his home.

The testimony of Varino is more definite and forceful. He states that after the second conversation had consumed about 25 or 30 minutes, plaintiff was told that he was in a hurry and had to go; and he started the motor. While the car was motionless, Buttitta walked around the front of the car, stopped beside and east of the front right fender, a foot or a foot and a half away, and continued to talk. The car was then driven slowly forward, to the left, and away from the curb. Varino further testifies,—"I thought he was clear, he wasn't even touching the fender or anything, unless he had his foot caught underneath. I didn't know I ran over him. I didn't feel any vibration; the only thing that I noticed as I passed I kept my eye on him and I noticed him hobble upon the sidewalk. I drove past him and when I noticed him hobbling naturally I backed up to see what had happened and Jimmie said I ran over his foot. Whether I ran over his foot or not I couldn't tell. I only took his version and the only thing is I saw his exertion, that is all."

During the maneuver, plaintiff was facing the driver, and was not seen to fall on or push the fender. Only a few feet were negotiated by the car before being brought to a stop.

Plaintiff continued to work for the F. Varino Company, Inc., from the date of the claimed occurrence, July 16, 1938, until December 31, 1938, when he lost his position because of unfavorable business conditions. No complaint of disability was made during that period. This suit was filed May 22, 1939.

■■ If plaintiff was standing on the left side of the machine opposite the driver's seat and his foot was run over by the

left front wheel, as he testifies, such could have happened only from a backing of the car. A forward movement thereof would have carried that wheel away from him. The record contains no positive testimony disclosing that Varino maneuvered the car in a backward direction; and he emphatically denies that he did. Furthermore, there was no reason for a movement of that character. The machine was away from the curb, and nothing was in front to interfere with its forward traveling.

Assuming, however, that a wheel of the machine passed over the foot and plaintiff was injured as a consequence thereof, it does not clearly appear that the injury was occasioned by any negligent driving of Varino. A plaintiff, in a cause of this type, carries the burden of proving that the accident occurred through the fault and negligence of the machine's operator. Beard v. Morris & Co., 156 La. 798, 101 So. 147; Lorance v. Smith, 173 La. 883, 138 So. 871. This burden has not been discharged.

■■ Plaintiff, through his counsel, has moved to remand the case to the district court for the purpose of permitting the taking of testimony of one W. R. Roberson, a resident of Downsville, Louisiana. He alleges in the motion that Roberson saw the accident but was not found until August 17, 1939, or after judgment had been rendered by the district court, notwithstanding his diligent and conscientious efforts to obtain eyewitnesses. Attached thereto is an affidavit of said person, dated August 18, 1939, in which the affiant says: "That about the middle of July, 1938, he brought a load of watermelons in Monroe and parked his car on Sixth Street facing north. That he saw a man standing in the street talking to a person in an automobile. That he did not know the name of the driver of the car or the person standing by the running board. That all of a sudden the car shot backward while the man was still talking to the driver, and then it shot forward. It looked like the car had gotten out of control of the driver. The man in the street, who I later learned was Mr. V. J. Buttitta, grabbed the left front fender of the car as it passed over his foot, and it looked as if he was trying to push the car away to protect himself. I have not seen Mr. Buttitta until Thursday night, August 17, 1939, since the accident."

The motion to remand does not appear to be seriously urged or relied on by appellant. Although his counsel made reference to it in oral argument before this court, the brief contains not a word about it. Judgment on the record as made up is asked. Furthermore, the motion's filing here did not take place until March 21, 1940, or more than five months after the affidavit's execution and the case's docketing in this court.

If, however, Roberson were permitted to testify to the facts related in the affidavit, it seems that his testimony would not materially strengthen plaintiff's case and disclose fault and negligence on the part of the driver. An appellate court will not remand a case because of newly discovered evidence, unless such proof is likely to change the result. Houghton v. Hall et al., 177 La. 237, 148 So. 37.

Therefore, the motion to remand is overruled, and the judgment appealed from is affirmed.