DANIEL V. LINK, JR., Plaintiff, v. CARL L. LAWRENCE and NORMAN E. LAWRENCE, Defendants.

*(March* 6, 1952.)

RICHARDS, P. J., sitting.

*Thomas R. Hunt* and *Henry A. Wise, Jr.,* for the plaintiff.

*William Prickett* for the defendants.

Superior Court for New Castle County, No. 253, Civil Action, 1949.

RICHARDS, P. J.:

On December 8, 1948, at about eleven P. M., the driver of the plaintiff's tractor trailer, Dale, was proceeding north on the east lane of the north bound highway of the Governor Printz Boulevard at a speed of about 30 miles an hour, said trailer being loaded with 24,000 pounds of logs.

The driver of the plaintiff's tractor trailer testified that when he reached the southerly end of a roller rink situated 20 feet off of the easterly side of said Governor Printz Boulevard, he first observed defendants' automobile just clearing the northerly side of said roller rink, facing toward the boulevard, at right angles therewith, and proceeding at about 15 miles per hour. It appeared from the evidence that the distance between the northerly and southerly end of said roller rink was approximately 82 or 90 feet. The plaintiff's driver further testified that by sliding his wheels on braking, the tractor trailer could be stopped in the space of 60 feet; that he continued his course for about 44 feet without reducing his speed or sounding his horn; that at this point he noticed defendants' automobile upon the highway and he then drove the tractor trailer to the far left lane, applied his brakes and blew his horn; that the defendants' automobile continued across the highway directly obstructing his course and he slid the wheels of the tractor trailer for a distance of approximately 8 feet, and cut it hard to the right to avoid a collision with the defendants' automobile; that the heavily loaded tractor trailer tipped onto its bank of left wheels, and skidded ahead into a gulley and by reason thereof was greatly damaged. The defendants' automobile came to a stop on a cross over road about 130 feet north of the point where it came onto the boulevard. It never came into contact with the tractor trailer.

In his argument for a new trial, the plaintiff stressed the facts that when his driver, Dale, first saw the defendants' automobile, it was 20 feet off of the highway; that his driver was operating a 12 ton tractor trailer which was not susceptible to

sudden evasive action without extreme peril to the driver and other nearby vehicles or persons; that the driver of his tractor trailer was being followed by another tractor trailer, which would have been endangered by an unwarned emergency stop and that under the laws of this State, the driver of his tractor trailer was entitled to the right of way upon the highway and had the right to assume that his right would not be carelessly challenged.

In an action involving a particular occurrence, such as an automobile accident, when the facts are in dispute, the question of whether the plaintiff is guilty of contributory negligence is always a question of fact for the jury. When, however, the facts are undisputed, as in this case, the Court may grant a non-suit or give binding instructions to the jury to find a verdict for the defendants, if the contributory negligence of the plaintiff clearly appears from the testimony.

It should not be forgotten that when the driver of the plaintiff's tractor trailer first saw the defendants' automobile, it was 20 feet off the highway, and proceeding toward the highway at a right angle at 15 miles per hour. Said driver was then approximately 82 or 90 feet from the point where defendants' automobile would reach the highway, if it proceeded in the same direction, and operating at a speed of 30 miles an hour. He admitted that the tractor trailer could be stopped in the space of 60 feet which would be between 20 and 30 feet from the defendants' automobile. He not only failed to stop, but failed to reduce his speed and continued in the same course for a distance of approximately 44 feet, which was approximately one-half of the distance between the point where he first saw the defendants' automobile and the point where it would reach the highway, if it continued its course. If he had stopped, of course, the accident would have been prevented. If he had reduced his speed, which would have given him better control of the tractor trailer, he would have been in a better position to prevent the accident.

I am not impressed by the argument relied upon by the plaintiff, that his driver was operating a 12 ton tractor trailer which was not susceptible to sudden evasive action without extreme peril to the driver and other nearby vehicles or persons; or by the argument that the driver's tractor trailer was being followed by another tractor trailer, which would have been endangered by an unwarned emergency stop. These conditions were known to his driver and constitute additional reasons why said driver should have proceeded in a more careful manner. If he had done so, the accident undoubtedly would have been avoided.

The argument that the driver of plaintiff's tractor trailer was entitled to the right of way upon the highway and had the right to assume that his right would not be carelessly challenged, is entitled to more careful consideration. There is no doubt that under the law of this State, the driver of a vehicle upon a public highway is entitled to the right of way over the driver of a vehicle entering such public highway from a private road or drive.

*Paragraph* 5636, *Sec. 98, of the Code of* 1935, grants that right in the following clear language: "The driver of a vehicle entering a public highway from a private road or drive shall yield the right of way to all vehicles approaching on such public highway".

This principle is generally recognized throughout this country, but it does not relieve the driver of a vehicle upon a public highway from exercising reasonable care to avoid injury to the person or property of others.

The following Delaware cases recognize that the driver of the plaintiff's tractor trailer had the right of way but hold that he was not entitled to use such right of way in a manner to eliminate the exercise of due care on his part, and that said right of way was subject to the qualification that he should proceed carefully as a prudent man would do under the circumstances. *Grant v. Marshall,* 2 *W. W. Harr.* 239, 121 *A.* 664;

*Spence v. Waters,* 9 *W. W. Harr.* 582, 4 *A.* 2d 142; *Greenplate v. Lowth,* 9 *W. W. Harr.* 350, 199 *A.* 659.

In *Kimball v. Bauckman,* 131 *Me.* 14, 158 *A.* 694, 696, the Court used the following language which is applicable to this case: "The defendant undoubtedly had the technical right of way. But this did not relieve him from the exercise of reasonable care. The supreme rule of the road is the rule of mutual forbearance, and, if a situation indicates a collision, although it arises from the fault of another, ordinary prudence requires the driver of a motor vehicle to seek to avoid a collision, though this involve the waiver of his right of way."

In *Primock v. Goldenberg,* 161 *Minn.* 160, 200 *N. W.* 920, 921, 37 *A. L. R.* 484, the Court stated: "Too much insistence on the right of way, even when one is clearly entitled to it, may be the grossest kind of negligence."

In the case of *Adams v. Gardiner,* 306 *Pa.* 576, 160 *A.* 589, 591, relied upon by the defendant, the facts showed that there was an automobile accident at a street intersection and the jury rendered a verdict for the plaintiff who was technically entitled to the right of way. This verdict was affirmed on appeal but the Court in commenting on the right of one to whom a duty is owed to assume that said duty would be performed, used this language: "However, this assumption, like many others, must yield to the realities of the situation, and, if the car on the left, even though further away from the intersection than the car on the right, approaches the intersection at such a high rate of speed as to make a collision at the intersection likely, should the driver on the right, relying on his 'right of way,' push on, it would be the manifest duty of the latter to yield his 'superior right' in the interest of the safety of both motorists and of the public."

The case of *Uhl v. Fertig,* 56 *Cal. App.* 718, 206 *P.* 467, is distinguishable from the present case because it appeared from

the testimony that the plaintiff's car was seen by the defendant as it approached the right of way.

In *Willis v. Standard Oil Co., Louisiana Appeal,* 17 *La. App.* 217, 135 *So.* 777, the facts were much like the facts in this case and judgment was entered for the plaintiff. It appeared, however, that it was raining, that the defendant's automobile was not equipped with a windshield wiper making his visibility poor and the defendant admitted that if he had waited just a little before coming out onto the road, the accident would have been avoided. In *Minnis v. William J. Lemp Brewing Co., Mo. App., St. Louis,* 226 *S. W.* 999, in affirming a judgment for the plaintiff in a street intersection case, the Court said, that reasonable minds might reach different conclusions as to whether the plaintiff was negligent under the evidence.

The case of *Dombrenos v. Chicago, R. I. & P. Ry. Co.,* 194 *Iowa* 1161, 191 *N. W.* 158, was a railroad crossing case, the Court made no ruling on the question of the plaintiff's negligence, but held that the record showed that the question was one for the jury.

The record in the case under consideration, in fact, the plaintiff's own testimony shows that he had an opportunity to prevent the accident either by stopping his tractor trailer or by reducing its speed which would have given him better control of it.

For these reasons, the motion for a new trial is denied.